**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 21, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 21, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRETT BASS, an individual; CURTIS MCCULLOUGH, an Individual; SWAN SEABERG, an Individual; THE SECOND AMENDMENT FOUNDATION, INC., a Washington nonprofit Corporation; and NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., a New York nonprofit Association; | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 99596-6 |
| v. | ) ) ) | En Banc |
| CITY OF EDMONDS, a municipality; EDMONDS POLICE DEPARTMENT, a department of the City of Edmonds, | ) ) ) ) ) | |
| Defendants. | ) ) ) | Filed : April 21, 2022 |

GONZÁLEZ, C.J. – Under our system of divided government, many elected bodies hold legislative power, including elected city councils. These councils, however, must legislate within constitutional constraints. One of those constraints is that city ordinances must not "conflict with general laws" that have been enacted by

*Bass v. City of Edmonds,* No. 99596-6

the people of our state by initiative or by our state legislature. WASH. CONST. art. XI, § 11. Constitutional general laws that state they explicitly occupy the field, that implicitly occupy the field, or that are otherwise inconsistent with local laws preempt local lawmaking. We are asked today whether a city ordinance that requires that guns be stored safely and kept out of unauthorized hands is preempted by state law. We hold that it is.

BACKGROUND

After robust debate following a mass shooting at the nearby Marysville Pilchuck High School, the Edmonds City Council adopted an ordinance requiring residents to safely store their firearms when not in use. Ordinance 4120, codified as Edmonds City Code (ECC) chapter 5.26. The ordinance contains two operative provisions. Under the "storage provision,"

> It shall be a civil infraction for any person to store or keep any firearm in any premises unless such weapon is secured by a locking device, properly engaged so as to render such weapon inaccessible or unusable to any person other than the owner or other lawfully authorized user.
>
> Notwithstanding the foregoing, for purposes of this section, such weapon shall be deemed lawfully stored or lawfully kept if carried by or under the control of the owner or other lawfully authorized user.

ECC 5.26.020. Under the "unauthorized access" provision,

> It shall be a civil infraction if any person knows or reasonably should know that a minor, an at-risk person, or a prohibited person is likely to gain access to a firearm belonging to or under the control of that person, and a minor, an at-risk person, or a prohibited person obtains the firearm.

ECC 5.26.030. Violation of either provision carries a fine. ECC 5.26.040.

2

*Bass v. City of Edmonds,* No. 99596-6

At around the same time, Washington voters enacted Initiative 1639. LAWS OF 2019, ch. 3. This initiative, among many other things, criminalizes unsafe storage of firearms but in more limited circumstances than Edmonds' ordinance. *Compare* RCW 9.41.360, *with* ECC 5.26.020, .030. The initiative specifically did not "mandate[] how or where a firearm must be stored." RCW 9.41.360(6).

The plaintiffs[1] challenged the ordinance as preempted by state law. The city moved to dismiss on the theory that the challengers did not have standing. Based on the facts alleged in the initial complaint, the trial judge found the plaintiffs had standing to challenge the safe storage section of the ordinance, ECC 5.26.020, but not the unauthorized access section, ECC 5.26.030, since they had not alleged facts that would tend to show an unauthorized person would get access to their weapons.

Later, both sides moved for summary judgment. Report of Proceedings at 3. The trial judge renewed her earlier determination that the plaintiffs had standing to challenge the safe storage portion of the ordinance, ECC 5.26.020, but not the unauthorized access portion, ECC 5.26.030. She concluded that the storage portion of the ordinance was preempted by state law.

Both sides appealed. The Court of Appeals concluded that the plaintiffs had standing to challenge the entire ordinance and that the ordinance was preempted by

---

[1] The current plaintiffs are Brett Bass, Curtis McCullough, and Swan Seaberg. They were joined on the complaint by the Second Amendment Foundation Inc. and the National Rifle Association of America Inc. The record suggests these organizations withdrew as parties to avoid discovery requests but continue to fund the litigation.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Bass v. City of Edmonds,* No. 99596-6

state law. *City of Edmonds v. Bass*, 16 Wn. App. 2d 488, 495, 497, 481 P.3d 596 (2021). We granted review. 198 Wn.2d 1009 (2021). The city is supported by the cities of Seattle, Walla Walla, Olympia, and Kirkland, as well as Brady and Washington Alliance for Gun Responsibility.

ANALYSIS

This case is here on review of summary judgment, presenting only issues of law. Our review is de novo. *Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 652, 278 P.3d 632 (2012) (citing *Pierce County v. State*, 150 Wn.2d 422, 429, 78 P.3d 640 (2003)). Summary judgment is appropriate when there is no genuine dispute as to any material question of fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Municipal ordinances are presumed valid, and the burden is on the challenger to establish otherwise. *Winkenwerder v. City of Yakima*, 52 Wn.2d 617, 624, 328 P.2d 873 (1958) (citing *City of Spokane v. Coon*, 3 Wn.2d 243, 100 P.2d 36 (1940)).

1. Standing

The city does not contest the plaintiffs' standing to challenge the storage portion of the ordinance. It contends that the plaintiffs lack standing to challenge the unauthorized access portion of the ordinance because they have not established they are likely to violate it. We conclude the plaintiffs have standing.

The plaintiffs brought their case under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, and sought injunctive relief under chapter 7.40 RCW. Under the

4

*Bass v. City of Edmonds,* No. 99596-6

Uniform Declaratory Judgments Act, "[a] person . . . whose rights, status or other legal relations are affected by a statute[] [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute[] [or] ordinance . . . and obtain a declaration of rights." RCW 7.24.020. The city has challenged the plaintiffs' standing to bring a declaratory judgment action. We use the common law test for standing to determine whether someone has standing under this act. *Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc.*, 193 Wn.2d 704, 711, 445 P.3d 533 (2019) (citing *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004)). Under that test, a person has standing if (1) the interest they seek to protect "'is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question'" and (2) "'the challenged action has caused injury in fact, economic or otherwise, to the party seeking standing.'" *Id.* at 711-12 (internal quotation marks omitted) (quoting *Grant County*, 150 Wn.2d at 802). Courts take a more liberal approach to standing for questions of major public importance. *See Farris v. Munro*, 99 Wn.2d 326, 330, 662 P.2d 821 (1983) (quoting *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 96, 459 P.2d 633 (1969)).

Standing under the Uniform Declaratory Judgments Act "is not intended to be a particularly high bar. Instead, the doctrine serves to prevent a litigant from raising another's legal right." *Wash. State Hous. Fin. Comm'n*, 193 Wn.2d at 712 (citing *Grant County*, 150 Wn.2d at 802). Plaintiffs plainly meet the first element of the

5

*Bass v. City of Edmonds,* No. 99596-6

common law test—the plaintiffs own and store firearms.  They are within the zone of interests regulated.

The city, in essence, argues that to satisfy the second element, the plaintiffs must show "'actual, concrete harm'" and that they have failed to do so because they have not shown they are likely to violate the statute.  Pet'r City of Edmonds' Suppl. Br. at 20 (quoting *Walker v. Munro*, 124 Wn.2d 402, 412, 879 P.2d 920 (1994)).  But this mistakes the sufficient for the necessary.  *Walker* mentions "actual, concrete harm" in describing what the challengers there had *failed* to show.  Actual, concrete harm is sufficient to establish injury in fact.  It is not, however, necessary.  *See To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 417, 27 P.3d 1149 (2001) (citing *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)).

Plaintiffs have testified they keep firearms unsecured and unlocked even when children are in their homes.  Regardless of whether plaintiffs subjectively believe they are storing their firearms in such a way to keep them out of the hands of children and others who should not have access to them, should a prohibited person get access to their firearms, the plaintiffs could be charged with a civil infraction that carries a potentially heavy penalty.  These consequences are sufficient to establish the injury-in-fact element of standing.  Therefore, they have standing to bring this challenge.[2]

---

[2] In contrast, this court recently concluded that a plaintiff lacked standing to challenge the alleged improper positioning of a traffic camera monitoring vehicle speeds in a school zone. *See Williams v. City of Spokane*, 199 Wn.2d 236, __ P.3d __ (2022).  There, the plaintiff had not challenged his own ticket for speeding in that school zone, establishing, as a matter of law, that he had been properly ticketed. *Id.* at 247-48.  Accordingly, the plaintiff in *Williams* lacked

6

*Bass v. City of Edmonds,* No. 99596-6

2. Preemption

We turn now to whether state law has occupied the field or otherwise preempts this ordinance. Cities have broad police power under article XI, section 11 of our state constitution. Municipal exercises of police power, however, may "not . . . conflict with general laws." WASH. CONST. art. XI, § 11; *see also Cont'l Baking Co. v. City of Mt. Vernon*, 182 Wash. 68, 72, 44 P.2d 821 (1935) (citing *Detamore v. Hindley*, 83 Wash. 322, 145 P. 462 (1915)).

The plaintiffs contend that both operative portions of the ordinance are preempted by RCW 9.41.290. "A state statute preempts an ordinance if the statute occupies the field or if the statute and the ordinance irreconcilably conflict." *Watson v. City of Seattle*, 189 Wn.2d 149, 171, 401 P.3d 1 (2017) (citing *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991)). Older cases have held that "[a] statute will not be construed as taking away the power of a municipality to legislate unless this intent is clearly and expressly stated." *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979) (citing *Nelson v. City of Seattle*, 64 Wn.2d 862, 866, 395 P.2d 82 (1964)). We have since found that the intent to occupy the field may be implied. *Watson*, 189 Wn.2d at 171 (citing *Brown*, 116 Wn.2d at 560). We consider both the specific preemption statute and any related statutes that shed light on legislative intent. *See Dep't of Ecology v. Campbell &*

---

standing because there was no "'actual, present and existing dispute.'" *Id.* (internal quotation marks omitted) (quoting *League of Educ. Voters v. State*, 176 Wn.2d 808, 816, 295 P.3d 743 (2013)).

7

*Bass v. City of Edmonds,* No. 99596-6

*Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002) (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)).

Our legislature has limited local firearm regulation for decades. The current preemption statute says:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

RCW 9.41.290; *see also* LAWS OF 1983, ch. 232, § 12 ("Cities, towns, and counties may enact only those laws and ordinances relating to firearms that are consistent with this chapter. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted.").

While the legislature's intent to occupy the entire field of firearm regulation is clear, not every municipal action that touches on firearms is within that field. For example, RCW 9.41.290 does not prevent a municipality from barring its employees from carrying concealed weapons while on duty. *See Cherry v. Municipality of Metropolitan Seattle*, 116 Wn.2d 794, 800, 808 P.2d 746 (1991). After reviewing relevant legislative history, this court concluded that "the Legislature . . . sought to

8

*Bass v. City of Edmonds,* No. 99596-6

eliminate a multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation" and that "[t]he 'laws and ordinances' preempted are laws of application to the general public." *Id.* at 801. Since the personnel policy was not a law of general application, it was not preempted by the statute.

Similarly, RCW 9.41.290 did not prevent a city from imposing strict rules on a gun show held at a municipal convention center. *See Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 356-57, 144 P.3d 276 (2006). Not only were the restrictions not laws of general application, cities have specific statutory authority to regulate gun possession in municipal convention centers and general proprietary authority to limit how their convention centers could be used. *Id.* at 355-56 (citing RCW 9.41.300), 357 (citing *Cherry*, 116 Wn.2d at 802). Accordingly, the city could impose the rules.

Not all rules of general application that touch on firearms are preempted by RCW 9.41.290. For example, RCW 9.41.290 does not prevent a city from taxing firearms and ammunition. *Watson*, 189 Wn.2d at 156. While we acknowledge that some regulations could masquerade as taxes, the *Watson* plaintiffs failed to show that the particular tax was a regulation. *Id.* Since RCW 9.41.290 preempted only firearm regulations, not taxes, the tax was not preempted. *Id.*

Similarly, the Court of Appeals found that RCW 9.41.290 did not preempt a county ordinance requiring shooting facilities to obtain operating permits. *Kitsap County v. Kitsap Rifle & Revolver Club*, 1 Wn. App. 2d 393, 399, 405 P.3d 1026

9

*Bass v. City of Edmonds,* No. 99596-6

(2017). The court noted that on its face, the preemption statute did not reference regulating shooting facilities. *Id.* at 406. The court also noted that the ordinance "impose[d] requirements only on owners and operators of shooting facilities, not on the individuals who discharge firearms at those facilities." *Id.* at 407. The court also noted (among many other things) that the legislature had explicitly given municipalities the power to "enact ordinances restricting the discharge of firearms 'where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized.'" *Id.* at 409 (quoting RCW 9.41.300(2)(a)).

Taken together, these cases establish that RCW 9.41.290 broadly preempts local ordinances that directly regulate firearms themselves, but not necessarily ordinances that have an incidental effect on the use and enjoyment of firearms or exercises of municipal authority that do not establish rules of general application to the public.

The city argues that the legislature intended only to preempt regulation in the nine statutorily enumerated areas: "registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms." RCW 9.41.290. But the preemption statute begins with "[t]he state of Washington fully occupies and preempts the entire field of firearms regulation." *Id.* Given that broad introductory phrase, we conclude the list is illustrative, not exclusive.

In the alternative, the city argues that RCW 9.41.290 does not preempt storage and unauthorized access regulations under the principle of ejusdem generis. "The rule

10

*Bass v. City of Edmonds,* No. 99596-6

of ejusdem generis requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest similar items to those designated by the specific terms." *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 882, 154 P.3d 891 (2007) (citing *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 970, 977 P.2d 554 (1999)). The city suggests the nine enumerated items on the list can be divided into two topics: firearms transactions ("registration, licensing, . . . purchase, sale, acquisition, [and] transfer") and active use of firearms ("possession . . . discharge, and transportation"). Since the ordinance does not apply to guns in the owner's possession, it argues that ordinances pertaining to storage are not preempted.

We decline to limit the preemption statute to firearms' transactions and active use. That limitation is simply not consistent with the words of the statute as a whole. Under that statute, "[t]he state of Washington hereby fully occupies and preempts *the entire field of firearms regulation*." RCW 9.41.290 (emphasis added). The key question is whether the ordinance regulates *firearms*—not whether it regulates firearm transactions or active use.

The legislature plainly meant to broadly preempt local lawmaking concerning firearms except where specifically authorized in chapter 9.41 RCW or other statutes. The city was acting in its regulatory, not proprietary, role and without the sort of explicit or necessarily implied authorization present in *Watson*, 189 Wn.2d 149, *Pacific Northwest Shooting Park*, 158 Wn.2d 342, or *Kitsap Rifle & Revolver Club,* 1

11

*Bass v. City of Edmonds,* No. 99596-6

Wn. App. 2d 393.  Nor was the city acting as an employer as in *Cherry*, 116 Wn.2d 794.  Accordingly, we hold that this ordinance is preempted by state law.[3]

One volume of the record arrived at the court marked "sealed."  Clerk's Papers at 301-99.  This volume included considerable material, such as a newspaper article and minutes of city meetings, that plainly should not have been sealed under article I, section 10 of the Washington State Constitution.  *See Dreiling v. Jain*, 151 Wn.2d 900, 915, 93 P.3d 861 (2004) (holding that the documents filed in support of dispositive motions may be sealed only under the five-factor test established by *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982)). The trial court's sealing order was not designated on appeal.  We remand this matter to the trial court to make any corrections necessary such that only documents that have been properly sealed under article I, section 10 are sealed, and to inform our clerk's office of any corresponding corrections to the record on appeal that should be made.

CONCLUSION

We hold that the plaintiffs have standing and that this ordinance is preempted by RCW 9.41.290.  We affirm the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

---

[3] Given that we resolve this case based on field preemption, we do not reach arguments about the intersection of this law and Initiative 1639.  Nor do we reach the city's argument that ambiguous statutes should be construed against preemption or their arguments below concerning jurisdiction and justiciability generally.

12

González, C.J.

WE CONCUR:

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.